# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DOLORES SEACRIST,

    Plaintiff,

    v.

GREGORY A. SKREPENAK, et al.,

    Defendants.

NO. 3:07-CV-2116

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before the Court are the Motions for Summary Judgment of Plaintiff Dolores Seacrist and Defendants Gregory A. Skrepenak, Rose S. Tucker, Stephen A. Urban, Robert F. Reilly, and Luzerne County.  (Docs. 24, 29.)  Plaintiff, a former County employee, commenced the present suit by filing a two-count complaint against Defendants, arising from the County's failure to grant her a thirty-nine thousand dollar ($39,000) severance payment pursuant to the terms of an early retirement plan offered to eligible employees.  (Doc. 1.)  Count I asserts a claim under 42 U.S.C. § 1983, alleging violation of her procedural and substantive due process rights under the Fourteenth Amendment to the U.S. Constitution.  Count II raises a state law breach of contract claim.  For the reasons set forth below, the Court will deny Plaintiff's motion and grant Defendants' motion.  The Court has jurisdiction over the § 1983 claim pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3), and supplemental jurisdiction over the breach of contract claim pursuant to 28 U.S.C. § 1367(a).

## **BACKGROUND**

Plaintiff Dolores Seacrist was employed by Defendant Luzerne County in the County

Office of the Clerk of Court from 1988 until her resignation, effective December 31, 2005. (Defs.' App. 4a-6a, 17a-18a, Doc. 31.)  However, she was suspended with pay from November 4, 2004 to November 30, 2005 and suspended without pay from that date until her resignation. (Defs.' App. 6a, 17a-18a; Defs.' Statement of Material Facts ¶ 11, Doc. 30) (hereinafter "Defs.' Statement").[1]

On October 3, 2005, Luzerne County's Director of Human Resources, Douglas Richards, circulated a memorandum to all County Department Heads and Row Officers. (Defs.' Statement ¶ 13.)  The memorandum contained a letter and fact sheet regarding the County's Life Transition Plan ("LTP"), an early retirement buy-out plan proposed in attempt to reduce the County's budget deficit. (*Id*. ¶¶ 13, 14.)  The memorandum asked supervisors to make copies of the fact sheet and letter for interested employees and gave information regarding upcoming employee information sessions. (Pl.'s App. 36a, Doc. 27.) The LTP fact sheet announced the terms and eligibility requirements of the program, including the following:

| | |
|---|---|
| <u>LIFE TRANSITION PLAN</u> | Luzerne County has established a Life Transition Plan offering incentives for eligible employees of the County to resign from their positions. |
| <u>ELIGIBLE EMPLOYEES</u> | (1) Employees of the County who are 50 years of age or older with at least ten full years of service as of December 31, 2005 |

**OR**

---

[1]   The Court refers to the parties' Statements of Material Facts to which they content there is no dispute, submitted pursuant to Local Rule 56.1, only where facts are admitted by the opposing party.

|  |  |
|---|---|
|  | (2) Employees of the County with at least 20 full years of service as of December 31, 2005, regardless of age. |
|  | Employees who have given the County notice of resignation as of September 28, 2005 <u>are not</u> eligible to participate. |
| <u>PAYMENTS DUE</u> | Each eligible employee who elects to participate in the plan will receive a severance payment consisting of: |
|  | • A one-time incentive payment of $20,000, plus $1,000 for each full year of service as of December 31, 2005. |
|  | • Payment of all accrued vacation and sick time normally due upon resignation. |

(*Id*. at 37a.)  Attached to the fact sheet was an Application for Resignation by which eligible County employees could apply to voluntarily resign in connection with the LTP.  (*Id*. at 39a.)  The application specified: "This Application for Resignation shall be effective only upon acceptance and execution by the County of this application."  (*Id*.)  It further read: "I understand that while my voluntary Application for Resignation is pending, I am expected to adhere to the county's applicable policies regarding my employment."  (*Id*. at 40a.)

Human Resources Director Richards developed a procedure for processing the Applications for Resignation under the LTP, including generating of a list of applicants submitted to the Luzerne County Commissioners for acceptance or denial.  (Pl.'s Statement of Material Facts ¶¶ 16-20, Doc. 25.) (hereinafter "Pl.'s Statement").

Plaintiff, considering herself an eligible employee under the terms of the fact sheet,

submitted an Application for Resignation.  (*Id*. at ¶¶ 7, 8.)[2]   Richards testified that he received Plaintiff's application, but he did not place her name on a list of eligible employees submitted to the County Commissioners for an acceptance/rejection vote.[3]  (Pl.'s App. 70a-71a.)  This was because Plaintiff was under criminal investigation at the time for tampering with court documents and he believed she may have violated county employment policies in doing so.  (*Id*. 70a-72a.)  The form Application for Resignation included a signature line reserved for Richards under the heading "Accepted by County of Luzerne," but he never signed Plaintiff's application.  (Defs.' App. 123a.)  Because her application was never accepted, Plaintiff did not receive an LTP severance payment.  (Pl.'s Statement ¶ 24.)  All accepted LTP participants received their payments during the early part of January 2006. (Defs.' App. 109a-110a.)  Thereafter, Plaintiff submitted a letter of resignation on January 17, 2006, effective December 31, 2005.  (Defs.' Statement ¶ 23.)

Plaintiff filed her two-count Complaint against Defendants on November 20, 2007. (Doc. 1.)  Count I raises a § 1983 claim and argues that Defendants' failure to afford her participation and payment under the LTP constitutes a deprivation of her procedural and substantive due process rights under the Fourteenth Amendment.  Count II raises a state law breach of contract claim; Plaintiff argues she accepted the terms and conditions of the LTP by submitting an Application for Resignation, thereby fixing Defendants' contractual obligation to grant her a severance payment in the sum of thirty-nine thousand dollars

---

[2] Defendants do not admit that Plaintiff was an eligible employee under the terms of the LTP, but acknowledge she submitted an Application for Resignation.  (Defs.' Response to Pl.'s Statement ¶¶ 7, 8, Doc. 33.)

[3] At least one of the Commissioners confirmed that Plaintiff's name never came before him for a vote. (Pl.'s Statement ¶ 15.)

($39,000).

Each Defendant filed an Answer to Plaintiff's Complaint on February 8, 2008. (Docs. 13, 14, 15, 16, 17.)  Plaintiff filed a Motion for Summary Judgment in her favor against all Defendants on December 16, 2008.  (Doc. 24.)  Defendants jointly filed a cross-Motion for Summary Judgment against Plaintiff as to both Counts.  (Doc. 29.)  These motions are fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *Id.*  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL

PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

### I.    Count I – Due Process

In Count I of her complaint, Plaintiff raises claims pursuant to 42 U.S.C. § 1983[4] for

---

[4] 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any

violation of her due process rights under the Fourteenth Amendment. Specifically, Plaintiff claims that she was entitled to a thirty-nine thousand dollar ($39,000) payment pursuant to the LTP of which she was deprived in violation of her procedural and substantive due process rights.

### A.    Procedural Due Process

The Fourteenth Amendment forbids a state from depriving persons of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. Courts in the Third Circuit employ a two-stage analysis when considering a § 1983 procedural due process claim: (1) whether the individual interests asserted fall within the Fourteenth Amendment's protection of "life, liberty, or property;" and (2) whether the procedures available provided Plaintiff with "due process of law." *Alvin v. Smith*, 227 F.3d 107, 116 (3d Cir. 2000). Thus, the Court must determine as a threshold inquiry whether Plaintiff demonstrates an interest protected by the Fourteenth Amendment.

It appears from Plaintiff's complaint that she considers her interest in the LTP severance payment to be part of a property interest in her employment with Luzerne County. She pleads:

> "[A]t the time of the offer of the Life Transition Plan by Defendants and Plaintiff's submission of the Application for Resignation, Plaintiff had a vested property interest in her position of employment and entitlement to the one-time lump sum payment in the amount of $39,000.00, which Defendants have refused and continue to refuse to pay ... [T]he actions of Defendants in converting and retaining said payment, which is the property of Plaintiff, have deprived Plaintiff of

---

citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

7

>   her constitutionally protected rights and have violated Plaintiff's procedural and substantive due process rights pursuant to the Fourteenth Amendment.

(Compl. ¶ 21, 24.)

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 540 (1985) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  As Plaintiff correctly observes, it is well settled that a plaintiff has a valid property interest in her employment where she can demonstrate that a "state statute, regulation, or agreement between the employer and employee establishes such an interest." *Boykin v. Bloomsburg Univ.*, 893 F. Supp. 378, 395 (M.D. Pa. 1995) (Muir, J.) (citing *Albrechta vs. Borough of White Haven*, 810 F. Supp. 139, 142 (M.D. Pa. 1992) (Kosik, J.)).

Plaintiff's complaint, however, does not raise a claim for deprivation of her employment without due process of law, but for deprivation of the LTP severance payment without due process of law.  (Compl. ¶ 24.)  Courts differentiate between an employee's claimed property interest in an employment benefit and an interest in the employment itself. *See, e.g., Ramsey v. Bd. of Educ.*, 844 F.2d 1268, 1274-75 (6th Cir. 1988) ("an interference with a property interest in a pure benefit [there, accumulated sick leave] of employment, as opposed to an interest in the tenured nature of the employment itself, is an interest that can be and should be redressed by a state breach of contract action and not by a federal action under section 1983").  To claim she was deprived of it without due process, Plaintiff must have a protected property interest in the LTP severance payment.

Plaintiff claims Defendants were contractually bound to afford her payment under the

LTP because she accepted their offer—made through the LTP fact sheet and letter that was circulated by the Human Resources office—to participate in the Plan by submitting her Application for Resignation. (Compl. ¶¶ 14-16.) Assuming without deciding that Plaintiff had a contractual right to payment, it does not necessarily follow that such right is a protected property interest under the Fourteenth Amendment.

Not all property interests created by contract are afforded constitutional protection. *Linan-Faye Constr. Co. v. Housing Auth.*, 49 F.3d 915, 932 (3d Cir. 1995); *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1397 (3d Cir. 1991)).  As the U.S. Court of Appeals for the Third Circuit has observed:

> [I]f every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contractual claims against public entities ... We agree that such a wholesale federalization of state public contract law seems far afield from the great purposes of the due process clause.

*Reich v. Beharry*, 883 F.2d 239, 242 (3d Cir. 1989).  Thus, the Third Circuit Court of Appeals has recognized two general types of contract rights that constitute protected property interests:

> [T]he first type arises where the contract confers a protected status, such as those characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits.  The second, albeit related type of property interest arises where the contract itself includes a provision that the state entity can terminate the contract only for cause.

*Unger*, 928 F.2d at 1399 (citations and quotation marks omitted).

Here, Plaintiff's asserted right to receive payment pursuant to the LTP falls into neither

category of contract right receiving constitutional protection.  First, she has not shown a protected status characterized by extreme dependance or permanence.  While the one-time severance payment is undoubtedly very important to Plaintiff, there is no evidence it is of the same character as welfare benefits, wherein the recipient is dependant on continuation of the entitlement for "day-to-day survival." *Boyd v. Rockwood Area Sch. Dist.*, 105 Fed. App'x 382, 386 (3d Cir. 2004) (citing *Goldberg v. Kelly*, 397 U.S. 254, 261-62 (1970)).  Neither does the one-time payment demonstrate the permanence associated with tenured employment.

Second, Plaintiff has not shown that the terms of the LTP limit the County's ability to terminate the Plan only for cause.  On the contrary, the LTP fact sheet circulated to interested employees specifies, "[t]he terms of the Life Transition Plan may be revoked or amended by the County at any time prior to December 1, 2005.  This includes ending or rescinding the Life Transition Plan or limiting the number of employees who may participate." (Pl.'s App. 38a.)  The document is silent as to the LTP's termination between December 1, 2005 and January 6, 2006, the date by which accepted participants were to receive payment according to the fact sheet.  (*Id*.)  The LTP Application for Resignation is also silent as to termination or revocation after acceptance of the application by the County.  (*Id.* at 39a-40a.) Termination during the period between December 1, 2005 and January 6, 2006 would presumably give rise to a breach of contract claim for Plan participants, but the record does not suggest that the County was limited to termination for cause only.  In other words, Plaintiff demonstrates nothing that elevates her claim from an ordinary breach of contract to a constitutionally protected property interest.

Because the Court concludes Plaintiff asserts no interest protected under procedural

due process, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment as to this claim.

B.   Substantive Due Process

Plaintiff also alleges under Count I that Defendants' failure to accept her LTP application and pay her severance was arbitrary and capricious in violation of her right to substantive due process.

Third Circuit Court of Appeals has held that a non-legislative government deprivation (such as an adverse employment decision) "that comports with procedural due process may still give rise to a substantive due process claim 'upon allegations that the government deliberately and arbitrarily abused its power.'" *Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1179 (3d Cir. 1997) (quoting *Midnight Sessions, Ltd. v. City of Phila.*, 945 F.2d 667, 683 (3d Cir. 1991). The Third Circuit Court of Appeals has further held that "a property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are 'arbitrary, irrational, or tainted by improper motive,'" *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (quoting *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000) (internal quotations omitted)). However, a property interest qualifying for protection under the substantive component of the due process clause must be of a "particular quality." *Nicholas*, 227 F.3d at 140 (quoting *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 598 (3d Cir.), *cert denied*, 516 U.S. 937 (1995)). "[W]hether a certain property interest embodies this 'particular quality' is not determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution." *Id.*

The *Nicholas* court held that tenured public employment is not a fundamental property interest entitled to substantive due process protection. *Id*. at 142. The court considered significant that tenured public employment is a state-created contract right. *Id*. at 143. As Justice Powell explained in a concurring opinion in *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229-30 (1985), a state law contract right "bears little resemblance to the fundamental interests that previously have been viewed a implicitly protected by the Constitution." *See also Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1142 n.10 (4th Cir. 1990) (professor's interest in position in university department "is essentially a state law contract right, not a fundamental interest embodied in the Constitution"); *Local 342, Long Island Public Serv. Employees v. Town Bd. of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994) ("We do not think, however, that simple, state-law contractual rights, without more, are worthy of substantive due process protection.").

Following the reasoning of *Nicholas*, this Court has held that a state-created contract right to the value of unused sick leave from a former employer is not within the category of property interests protected by the substantive component of the due process clause. *Piekutowski v. Twp. of Plains*, No. 05-cv-2078, 2006 U.S. Dist. LEXIS 82012, at *26 (M.D. Pa. Nov. 9, 2006) (Vanaskie, J.). Analogous to *Piekutowski,* Plaintiff's alleged contractual right to an employment benefit is not an interest recognized as fundamental under the U.S. Constitution and thus does warrant substantive due process protection. Accordingly, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment as to Plaintiff's substantive due process claim.

## II. Count II – Breach of Contract

Count II of Plaintiff's complaint raises a state law claim for breach of contract. She argues that the LTP was offered to all eligible County employees and, qualifying as such an employee, her timely acceptance formed a binding contract between the parties, entitling her to a thirty-nine thousand dollar ($39,000) severance payment. Defendants argue that no contract was ever formed between Plaintiff and the County.

"It is axiomatic that, to form a contract, there must be an offer, acceptance, and consideration." *Reed v. Pittsburgh Bd. of Pub. Educ.*, 862 A.2d 131, 134 (Pa. Commw. Ct. 2004). However, the parties differ in what they view as the initial offer in this case. Plaintiff argues that the LTP letter and fact sheet attached to the October 3, 2005 memorandum circulated by the Human Services Department constituted an offer to all eligible employees and that her Application for Resignation constituted acceptance of the offer. (Br. in Supp. Pl.'s Mot. for Summ. J. 2,10, Doc 26.) Defendants argue that Plaintiff's application constituted an offer to resign in exchange for the LTP severance payment and that her offer was never accepted by the County. (Br. in Supp. Defs.' Mot. for Summ. J. 19, Doc. 31.)

As the Pennsylvania Commonwealth Court has explained:

> A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent ... Whether a statement is intended as an offer must be examined in light of the surrounding circumstances ... A request for bids or an invitation for others to make an offer is not an offer.

*Reed*, 862 A.2d at 135 (internal quotations and citations omitted).

In *Reed*, plaintiff schoolteacher brought a breach of contract claim against defendants

13

school board and district. Plaintiff argued that defendants contractually agreed to retain her on a list of eligible teachers from which it was statutorily required to hire if she took and passed an eligibility examination. *Id.* at 134. Moreover, she alleged defendants agreed to interview and hire her according to her placement on the list. *Id.* Plaintiff argued that defendants' offer consisted of a form outlining the eligibility list requirements and informing professionals of the need to place on the list to be considered for employment. *Id.* She claimed to accept the offer by participating in the process to be placed on the list that was described in the form. *Id*. The court found that the form did not constitute an offer. *Id*. at 135. It reasoned:

> [The form] was at most an invitation for persons such as [plaintiff] to apply for teaching positions. The form contemplated the need for Defendants to make a further manifestation of assent. Thus, the form states persons on the eligibility list will be "considered" for employment. While [plaintiff] fulfilled the requirements to be on the eligibility list, Defendants did not make any further manifestation of assent to hire [plaintiff]. Therefore, no contract was formed.

*Id*.

Like the form in *Reed*, the LTP letter and fact sheet circulated by the Human Resources department was an invitation to apply, not an offer. The fact sheet informed employees about the Plan and stated:

> Eligible employees *may apply* to participate in the Life Transition Plan from October 3, 2005 to October 21, 2005 by completing the Application for Resignation attached hereto ... *If* an employee's Application for Resignation *is accepted by the County*, his/her last day of employment will be December 31, 2005.

(Pl.'s App. 38a) (emphasis added). The application attached to the fact sheet further stated in bold lettering, "This Application for Resignation shall be effective only upon acceptance

14

and execution by the County of this application." (*Id.* at 39a.)  These documents clearly contemplate the need for the County to make a further manifestation of assent after receiving an employee's application before a contract would arise.  Moreover, the undisputed facts leave no doubt that, though Plaintiff submitted an application, it was never accepted.  Like the plaintiff in *Reed*, while Plaintiff may have fulfilled the eligibility requirements to participate, Defendants did not make any further manifestation of assent and no contract was formed.  The Court will therefore grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment as to Plaintiff's breach of contract claim.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment (Doc. 29) and deny Plaintiff's Motion for Summary Judgment (Doc. 24).

An appropriate Order follows.


April 6, 2009                                    /s/ A. Richard Caputo
Date                                             A. Richard Caputo
                                                 United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DOLORES SEACRIST, | |
| Plaintiff, | NO. 3:07-CV-2116 |
| v. | (JUDGE CAPUTO) |
| GREGORY A. SKREPENAK, et al., | |
| Defendants. | |

**ORDER**

**NOW**, this   6th   day of April, 2009, **IT IS HEREBY ORDERED** that:

(1) Plaintiff Dolores Seacrist's Motion for Summary Judgment (Doc. 24) is **DENIED.**

(2) Defendants Gregory A. Skrepenak, Rose S. Tucker, Stephen A. Urban, Robert F. Reilly, and Luzerne County's Motion for Summary Judgment (Doc. 29) is **GRANTED.**

(3) The Clerk of Court shall mark this case as **CLOSED.**

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge